IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PEGGY ANN BROCK HARTZOG,         )
                                 )
              Plaintiff,         )
                                 )
       v.                        )   Civil Action No. 18-484
                                 )
NANCY A. BERRYHILL,              )
Acting Commissioner of Social Security, )
                                 )
              Defendant.         )

O R D E R

AND NOW, this 19th day of September, 2019, upon consideration of the parties' cross-motions for summary judgment, the Court, upon review of the Commissioner of Social Security's final decision denying Plaintiff's claim for disability insurance benefits under Subchapter II of the Social Security Act, 42 U.S.C. § 401 et seq., and denying Plaintiff's claim for supplemental security income benefits under Subchapter XVI of the Social Security Act, 42 U.S.C. § 1381 et seq., finds that the Commissioner's findings are supported by substantial evidence and, accordingly, affirms. See 42 U.S.C. § 405(g); Jesurum v. Secretary of U.S. Department of Health & Human Services, 48 F.3d 114, 117 (3d Cir. 1995); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom., 507 U.S. 924 (1993); Brown v. Bowen, 845 F.2d 1211, 1213 (3d Cir. 1988). See also Berry v. Sullivan, 738 F. Supp. 942, 944 (W.D. Pa. 1990) (if supported by substantial evidence, the Commissioner's decision must be affirmed, as a federal court may neither reweigh the evidence, nor reverse, merely because it

1

would have decided the claim differently) (citing Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981)).[1]

---

[1] Plaintiff argues that the Administrative Law Judge ("ALJ") erred in several ways in finding, after two remands, that she is not disabled under the Social Security Act. First, she argues that the ALJ failed to analyze whether her migraine condition met or equaled a listing at Step Three of the sequential analysis. She further asserts that the ALJ failed to properly account for her migraine headaches in formulating her residual functional capacity ("RFC"). Finally, she contends that the ALJ failed to give proper weight to the opinions of her treating health care providers. The Court disagrees and instead finds that substantial evidence supports the ALJ's decision that Plaintiff is not disabled.

Plaintiff initially argued that the ALJ failed to consider whether her migraine headaches met or equaled Listing 11.03, 20 C.F.R. Part 404, Subpart P, Appendix 1, pertaining to non-convulsive epilepsy. She, correctly, identified Social Security Administration guidance that previously established Listing 11.03 as the most appropriate listing for considering migraines. However, as the parties now acknowledge, Listing 11.03 was rescinded effective September 29, 2016, after this matter was last remanded but well before the ALJ issued his decision on February 14, 2018. Plaintiff, accordingly, has withdrawn the portion of her argument relating to Listing 11.03. However, she still contends that the ALJ failed to provide an adequate analysis of whether her migraines met or equaled a listing, regardless of whether Listing 11.03 was in effect. (Doc. No. 15 at 5). She also suggests that Listing 11.02, as it pertains to dyscognitive seizures, is now the most analogous listing. (Id. at 6).

The Court notes that it did, in its March 31, 2016 Order, indicate that the ALJ, on remand, should consider whether Plaintiff's migraine headaches met or equaled Listing 11.03, which, at the time, was still applicable. (R. 2082). Consistent with this directive, the ALJ considered whether Plaintiff's migraines met or equaled any applicable listings set forth at 11.00. (R. 1990). In so doing, he incorporated his extensive discussion of the effects of Plaintiff's migraines later in his decision. (Id.). The Court finds this discussion to sufficiently address the applicability of the listings under 11.00, including 11.02. Plaintiff does not attempt to demonstrate how she does meet this, or any other, listing, and, indeed, the showing of a dyscognitive seizure requires a showing of an alteration of consciousness, see Listing 11.00.H.1.b, of which there is no evidence here. It is important to remember that to meet a listing, a claimant must "present medical findings equal in severity to *all* the criteria of a listed impairment." Degenaro-Huber v. Comm'r of Soc. Sec., 533 Fed. Appx. 73, 75 (3d Cir. 2013) (quoting Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in the original)). Substantial evidence supports the ALJ's finding that Plaintiff's migraine condition did not.

Plaintiff next argues that the ALJ failed to properly account for her migraine headaches in determining her RFC. This was the primary basis for this Court's previous remand in 2016, and while the ALJ's 2018 decision is not completely without error on this point, the ALJ did adequately explain the impact of Plaintiff's migraines on her RFC.

2

The Court's major concern last time was that the ALJ, in his December 23, 2014 decision, appeared to find that Plaintiff's migraines had not occurred at a level sufficient to impact her RFC for 12 consecutive months, based on unsupported findings, and the Court therefore was unable to determine whether the ALJ had properly accounted for Plaintiff's migraines in the RFC. In his 2018 decision, though, the ALJ clearly indicated that Plaintiff's migraines impacted her RFC throughout the relevant timeframe. (R. 1994-96). He, in fact, expressly explained how he incorporated Plaintiff's migraines into his RFC analysis by limiting her to sedentary work and restricting her from all exposure to work hazards, excessive noise, and bright light. (R. 1996).

As Plaintiff points out, the ALJ still misstates the record in making his findings, particularly the records of Christopher Rhody, D.O., Plaintiff's treating general practitioner. Indeed, as the Court pointed out in its prior remand of this matter, the ALJ incorrectly stated, in his 2014 decision, that Dr. Rhody's treatment notes reflected no mentions of headaches after July 2009 until June 2010. (R. 610, 2079). Unfortunately, this misstatement appears in the ALJ's most recent decision as well. (R. 1994). However, given the broader scope of his overall discussion, this minor error no longer necessitates remand, particularly in light of the fact that the headaches reported by Plaintiff to Dr. Rhody between July 2009 and June 2010 appear to refer to sinus headaches, and not necessarily migraine headaches. (R. 551, 557).

As noted, the primary reason for the previous remand was for the ALJ to reconsider his finding that Plaintiff's migraines had never been sustained enough to impact her RFC, given that it was based, in part, on the erroneous finding that Plaintiff had gone a year without reporting any headaches to Dr. Rhody. Upon remand, the ALJ in his 2018 decision clearly found that the migraines were generally present over the relevant time period. His discussion in his most recent opinion instead focused on the fact that her reports of migraines were sporadic and that they improved significantly with medication. (R. 1994-96). The issue now, properly framed, is how frequent and severe Plaintiff's migraines were over the course of the relevant time period. Failure to acknowledge two reports of sinus headaches to Dr. Rhody in 2009 does not have a material impact on this analysis.

The record is now significantly more developed in regard to Plaintiff's migraine headaches. The ALJ had previously discussed the "significant improvement in the frequency and severity of her headaches" noted by Tatyana P. Barsouk, M.D., in July of 2014. (R. 611, 1928). In the instant decision, he again discussed this finding, which is now supported by additional notes from Dr. Barsouk from December 15, 2014, where she clarified that, as of July, Plaintiff was experiencing "maybe 1 headache per week which was very mild and not associated with photo, phonophobia, nausea, or vomiting." (R. 1995, 2348). The ALJ went on to acknowledge a later increase in the severity of Plaintiff's headache symptoms, which happened when Plaintiff herself altered her medication dosage. (R. 1995, 2341). He also considered the fact that Plaintiff had cancelled an appointment for botox treatment (before ultimately abandoning this treatment after one appointment), and that her symptoms again improved by April 20, 2016. (R. 1995). This evidence is all relevant to the frequency and severity of Plaintiff's migraines in determining their impact on the RFC.

Plaintiff asserts that the analysis was insufficient because it did not address the episodic nature of her migraines, nor did it account for other limitations allegedly caused by her condition, such as being absent from work or off-task while at work. However, these limitations are based primarily on Plaintiff's own subjective complaints. While such claims were certainly relevant, the ALJ was not under an obligation to simply accept what she said without question. See 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4); Chandler v. Comm'r of Soc. Sec., 667 F.3d 356, 363 (3d Cir. 2011). The ALJ here clearly considered Plaintiff's testimony, but found it to be not fully supported by the record. His discussion was extensive and supported by substantial evidence.

In sum, the Court finds that the RFC findings in the 2018 ALJ decision were adequately discussed and supported by substantial evidence, especially in light of the United States Supreme Court's recent reminder that the threshold for meeting the substantial evidence standard "is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). The ALJ here focused on determining how often Plaintiff suffered from migraines and how serious they were when she did. He determined them to be rather sporadic and of varying, but generally improving, intensity, and accounted for them by placing certain limitations in the RFC, but not all of the limitations claimed by Plaintiff in her testimony. The evidence supports this finding. Whether it hypothetically could also have supported an RFC finding that did include the restrictions that Plaintiff would miss a day of work per month and be off-task for a significant amount of the day is irrelevant, as "[t]he presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." Malloy v. Comm'r of Soc. Sec., 306 Fed. Appx. 761, 764 (3d Cir. 2009).

The issue is not whether Plaintiff did, in fact, suffer from migraine headaches during the relevant time, as it is clear that the parties and the ALJ agree that she did. The issue is whether this condition "caused functional limitations that precluded [her] from engaging in any substantial gainful activity." Walker v. Barnhart, 172 Fed. Appx. 423, 426 (3d Cir. 2006). The ALJ explained how he formulated Plaintiff's RFC in regard to her migraines in significant detail, and the Court finds his determination to be supported by substantial evidence.

Finally, Plaintiff argues that the ALJ gave insufficient weight to the June 10, 2010 opinion of Dr. Rhody (R. 530-32) and the May 20, 2014 opinion of Martin Violago, M.D., her treating pain management specialist (R. 1925). Plaintiff correctly asserts that when assessing a claimant's application for benefits, the opinion of the claimant's treating physicians generally is to be afforded significant weight. See Fargnoli v. Massanari, 247 F.3d 34, 43 (3d Cir. 2001); Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999). In fact, the regulations provide that for claims, such as this one, filed before March 27, 2017, a treating physician's opinion is to be given "controlling weight" so long as the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Fargnoli, 247 F.3d at 43; Plummer, 186 F.3d at 429. As a result, the ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, and not on the basis of the ALJ's own judgment or speculation, although he may afford a treating physician's opinion more or less weight

4

depending upon the extent to which supporting explanations are provided. See Plummer, 186 F.3d at 429. However, it is also important to remember that:

> The ALJ -- not treating or examining physicians or State agency consultants -- must make the ultimate disability and RFC determinations. Although treating and examining physician opinions often deserve more weight than the opinions of doctors who review records, "[t]he law is clear . . . that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity[.]" Brown v. Astrue, 649 F.3d 193, 197 n. 2 (3d Cir.2011). State agent opinions merit significant consideration as well.

Chandler, 667 F.3d at 361 (internal citations omitted in part).

Although Plaintiff characterizes the ALJ's alleged error in weighing the medical opinion evidence as one of law, this is not really the case. Plaintiff argues that the ALJ's legal mistake was not expressly considering each factor in 20 C.F.R. §§ 404.1527 and 416.927. However, while an ALJ must, of course, consider the factors set forth in those regulations, the ALJ need not expressly discuss each factor. See Palmer v. Colvin, No. 1:14-0311-TFM, 2015 WL 5286171, at *7 n.5 (W.D. Pa. Sept. 10, 2015). Indeed, the ALJ need not use any "particular language or adhere to a precise format" in assessing opinion evidence. Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004). Therefore, the fact that the ALJ did not explain how each factor in Sections 404.1527 and 416.927 applied to his analysis is not a mistake of law.

In any event, the ALJ did, in fact, consider the proper factors in determining the weight to apply to the medical opinions in this case. Plaintiff argues that the ALJ considered the opinions of Drs. Rhody and Violago "in isolation from each other," contrary to his duty to consider the consistency of medical opinions with the record as a whole, including other medical opinions, pursuant to 20 C.F.R. §§ 404.1527(c)(4) and 416.927(c)(4). However, the ALJ specifically *did* consider these two opinions together and even discussed the fact that the two doctors worked together at Canonsburg Community Health Center. (R. 2001, 2003-04). He also clearly indicated that each of these two physicians had a long-standing treating relationship with Plaintiff. (R. 2000-02). The ALJ, as Plaintiff acknowledges, considered the consistency of the opinions with the other evidence of record and the supportability of the opinions, including the fact that Drs. Rhody and Violago "merely check-off or otherwise indicate functional limitations in their reports without citing to any treatment records or evidence that supports their assessments." (R. 2004). While, as Plaintiff points out, "check-box" opinions are not improper *per se*, the Court of Appeals for the Third Circuit has stated that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best." Mason v. Shalala, 994 F.2d 1058, 1065 (3d Cir. 1993). The ALJ could and did consider this aspect of the opinions.

The issue really, then, is not whether the ALJ properly followed the law (which he did), but whether his findings regarding the weight afforded to the medical opinions are

5

supported by substantial evidence. As noted above, the ALJ discussed the record evidence and how it was inconsistent with the opinions of Drs. Rhody and Violago, and the Court finds this discussion to be sufficient and supported by substantial evidence. The Court further notes that, although Plaintiff alleges that the ALJ relied on the fact that she mowed her lawn to discount these opinions, it is clear from the context that the ALJ's statement that Plaintiff is able to perform daily activities is a reference to medical records documenting this finding. (R. 1928, 2439, 2441, 2444, 2447, 2449).

Plaintiff also takes issue with the fact that the ALJ gave more weight to several other opinions in the record, specifically those of Miles Lance Weaver, M.D. (R. 262-63), with whom Plaintiff followed up after gastric bypass surgery, and her treating rheumatologist David E. Seaman, M.D. (R. 351-53), as well as that of state agency physician Abu N. Ali, M.D. (R. 520-24). While conceding that the first two doctors had a treating relationship with her, Plaintiff argues that their opinions – prepared on July 1, 2008, and August 21, 2008, respectively – predate the opinions of Drs. Rhody and Violago and that they are narrowly tailored to the specific condition these doctors were treating. Although Plaintiff's contentions are correct, these factors did not stop the ALJ from giving them the weight they were due. First, the ALJ acknowledged the time span since these opinions were rendered and considered more current evidence in assigning them weight. Further, neither Dr. Weaver nor Dr. Seaman purported to opine on anything outside of the scope of their treatment with Plaintiff. There is also no indication that the ALJ relied on these opinions to discount Dr Rhody's and Dr. Violagao's opinions, which pertained to Plaintiff's back and neck pain. Indeed, all of these treating physicians were really addressing different impairments, and none offered an opinion relevant to the limitations created by Plaintiff's migraine headaches.

As for the state reviewing agent, the law is clear that although "the opinions of a doctor who has never examined a patient have less probative force as a general matter, than they would have had if the doctor had treated or examined him," Morales v. Apfel, 225 F.3d 310, 320 (3d Cir. 2000) (internal quotations omitted), where "the opinion of a treating physician conflicts with that of a non-treating, non-examining physician, the ALJ may choose whom to credit." Id. at 317. See also Dula v. Barnhart, 129 Fed. Appx. 715, 718-19 (3d Cir. 2005). The ALJ, of course, "'cannot reject evidence for no reason or for the wrong reason,'" Morales, 225 F.3d at 317 (quoting Plummer, 186 F.3d at 429), and can only give the opinion of a non-treating, non-examining physician weight insofar as it is supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation provided for the opinion. See Social Security Ruling 96-6p, 1996 WL 374180 (S.S.A.), at *2 (1996). In certain cases, it would not be unwarranted to give more weight to the non-examining professional's opinion. See Salerno v. Comm'r of Soc. Sec., 152 Fed. Appx. 208 (3d Cir. 2005) (affirming an ALJ's decision to credit the opinion of the non-examining state agency reviewing psychologist because his opinion was more supported by the record than the opinions of the treating physician and the consultative examiner).

Here, the ALJ adequately discussed the record and its consistency with the opinion of the state reviewing agent. Plaintiff objects, however, due to the fact that Dr. Ali's

6

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (document No. 11) is DENIED and that Defendant's Motion for Summary Judgment (document No. 13) is GRANTED.

s/Alan N. Bloch
United States District Judge

ecf: Counsel of record

---

opinion, completed on January 2, 2009, was rendered without access to later record evidence, including Dr. Rhody's and Dr. Violago's opinions. It is not unexpected for the record to contain evidence post-dating the state reviewing agent's opinion. Generally speaking, "there is always a time lapse between the consultant's report and the ALJ hearing and decision." Chandler, 667 F.3d at 361. The issue here, of course, is that, given the age of the case, *all* of the medical opinions are long in the tooth. However, the Court notes that the ALJ did not simply adopt Dr. Ali's opinion, or any other, but rather considered all of them in formulating the RFC. Indeed, the RFC here was far more restrictive than the one proposed by Dr. Ali. (R. 1991, 2004). Moreover, the ALJ acknowledged that the reviewing agent did not have access to the later medical records. The ALJ did, though, have access to this later evidence to which none of the opining medical professionals did, and clearly relied upon and discussed that evidence in making his findings.

This case has certainly not always gone smoothly. However, the ALJ's instant opinion is thorough and well-supported, and Court therefore affirms. While the Court acknowledges Plaintiff's suggestion that oral argument may assist the Court in this matter, the Court finds such argument to be unnecessary in light of the extensive record in this case and the parties' comprehensive and well-crafted briefs.